[Civ. No. 23108. First Dist., Div. Two. Feb. 28, 1967.]

COLIN E. PATCHIN, Plaintiff and Appellant, v. CITY OF OAKLAND et al., Defendants and Respondents.

Carroll, Davis, Burdick & McDonough and Philip Paul Bowe for Plaintiff and Appellant.

Hilton J. Melby and Edward A. Goggin, City Attorneys, and Mark B. Shragge, Deputy City Attorney, for Defendants and Respondents.

SHOEMAKER, P. J.—This is an appeal by plaintiff Colin Patchin from a judgment denying him a peremptory writ of mandate compelling defendants City of Oakland and its Police and Fire Retirement Board to grant his application to retire for service, pursuant to the provisions of section 241, subdivision (a), of the Charter of the City of Oakland.

The facts are without dispute. Plaintiff joined the Oakland Fire Department on June 17, 1941, and became a member of the relief and pension system then in effect. In 1951, plaintiff exercised his option, as a member of said system, to join the combined Police and Fire Retirement System which had been established by a city charter amendment on May 4, 1951. Said amendment added article XXVI (consisting of sections 233 through 252) to the charter.[1]

On December 2, 1960, plaintiff incurred a nonservice-connected injury and was disabled as a result thereof. Immedi-

---

[1]The pertinent provisions thereof provide in part as follows:

*Section 240*: ''The following words and phrases, as used in this Article, unless a different meaning is plainly required by the context, shall have the following meaning: 'Retirement allowance,' . . . or 'allowance' shall mean equal monthly payments, beginning to accrue upon the date of retirement, . . . and continuing for life, unless a different term of payment is definitely provided by the context. . . . For the purposes of the Retirement System established by this Article, the terms 'member of the Police or Fire Department,' 'member of the Department,' 'member of the System,' or 'member' shall mean any regularly appointed member of the Police or Fire Departments of the City of Oakland who become members of the Retirement System established by this Article . . . .''

*Section 241*: ''(a) Any member of the Police or Fire Department who completes at least 25 years of service in the aggregate, regardless of age, or at least 20 years of service in the aggregate and attains the age of 55 years, said service to be computed under section 242, may retire for service at his option. . . .

''(c) A member retired after meeting the requirements of paragraph[s] (a) . . . shall receive a retirement allowance equal to fifty (50) per cent of the compensation attached to the average rank held during the three (3) years immediately preceding such retirement, plus an additional allowance at the rate of one and two-thirds (1⅔%) per cent of said compensation for each year of service rendered after the effective

ately following his accident, plaintiff went on sick leave at full pay for a period of 60 days and at half pay for an addi-

date of this Article and after qualifying for service retirement, not to exceed ten (10) years. . . .''

*Section 242:* ''The following time and service shall be included in the computation of the service to be credited to a member for the purpose of qualification for retirement and death benefits and for calculation of retirement benefits: (1) Time during and for which said member received compensation as a member of the Police or Fire Department prior or subsequent to the effective date of this Article, including all such time said member was unable to perform his duties by reason of injury or sickness from any cause. . . .''

*Section 243:* '' (a) Any member of the Police or Fire Department who becomes incapacitated for the performance of duty by reason of any injury received in, or illness caused by or arising out of the performance of duty and which disability continues without interruption for one (1) year, may be retired, and, if not qualified for service retirement shall receive a retirement allowance equal to seventy-five (75%) per cent of the compensation attached to the average rank held by such member during the one (1) year immediately preceding such retirement. Such retirement allowance shall be paid until the date upon which said member would have qualified for service retirement had such member rendered service without interruption, and on and after said date said retirement allowance shall be equal to the retirement allowance said member would have received if retired for service on said date, based on the compensation attached to the average rank held during the one (1) year next preceding retirement. If at the time of retirement for disability, the member is qualified for retirement for service, said member shall receive a retirement allowance computed under the provisions of Section 241.

'' (b) Any member of the Police or Fire Department who becomes incapacitated for the performance of duty for any cause not included in the provisions of the preceding paragraph (a) and who shall have completed at least ten (10) years of service in the aggregate, shall be retired upon a retirement allowance calculated under Section 241, if he has attained the age of fifty-five (55) years, otherwise upon a retirement allowance equal to one and one-half (1½%) per cent of the compensation attached to the average rank held by such member during the three (3) years next preceding such retirement for each year of service, provided that said retirement allowance shall not be less than thirty-three and one-third (33⅓%) per cent of said compensation. . . .

'' (c) The Board may at any time order any member who has been retired for disability to be examined by one or more physicians appointed by the Board for that purpose, and if it is found that the disability has ceased, shall order that the retirement allowance shall cease and said member shall be restored to the service in the rank occupied at the time of retirement.''

*Section 246:* ''Whenever any member of the System or a dependent of such member receiving a retirement allowance under the provisions of this Article shall wilfully disobey any rule or regulation of the Board with the intention of being insubordinate, or shall be convicted of a felony or shall become dissipated or shall become an habitual drunkard, in such event the Board may order that the retirement allowance payable to such member or dependent shall not be paid to such person but shall thereupon become payable to the family of such member next in order of succession as provided in Section 245 of this Article.''

*Section 251:* ''Should a member of the System cease to be a member of the Police or Fire Department through any cause other than death or retirement, the member's accumulated contributions in the Fund shall be refunded to such member.''

tional period of 60 days. The city council then granted his request to remain on sick leave at half pay for an additional 90-day period.

On June 13, 1961, plaintiff applied for disability retirement, requesting that such retirement become effective on July 1, 1961. The Police and Fire Retirement Board granted his application on June 27, 1961.

On July 1, 1961, when plaintiff's disability retirement became effective, he had completed 20 but less than 25 years of service and was 52 years of age. Under the provisions of section 243, subdivision (b), he was accordingly granted a retirement allowance equal to one-third the compensation attached to the average rank which he had held during the three years preceding retirement.

On April 1, 1963, plaintiff, who had never applied for a return to active duty and was still receiving a disability retirement allowance, applied for voluntary service retirement under section 241. Plaintiff requested that said retirement become effective on July 19, 1963, the date when he would attain the age of 55. The Police and Fire Retirement Board denied his application on April 30, 1963, and subsequently denied his requests for rehearing. He then commenced the instant proceeding to compel the granting of his application.

The trial court made findings in accord with the above factual summary and also found that the Oakland Police and Fire Retirement Board had in actual practice retired for service members of the police and fire departments who had completed 20 but less than 25 years of service and who attained 55 years of age while on leave of absence without pay; that said board had also retired for service a member of the fire department who had been retired for nonservice-connected disability for a period of time but who had been restored to membership in the fire department and whose disability retirement allowance had ceased prior to being retired for service; that said board had never retired for service members of the retirement system who, at the time of such retirement, were retired for nonservice-connected disability; that said board had never retired for service persons who were not members of the police or fire departments at the time they became eligible for service retirement. The court concluded that plaintiff was not a member of the Oakland Fire Department, within the meaning of section 241, subdivision (a), of the city charter, on April 1 or July 19, 1963, and that he was not entitled to be retired for service under that section.

Judgment was entered in favor of defendants.

Plaintiff and defendants agree that the sole question to be decided is whether a policeman or fireman who has been retired for a nonservice-connected disability and who has never been restored to active service remains eligible to "re-retire" for service, under section 241 of the Oakland City Charter, when he attains age 55. Plaintiff, who contends that this question must be answered in the affirmative, points out that section 241, subdivision (a), is by its terms applicable to any "member" of the police or fire department who completes 20 years' service and attains age 55. Since section 240 defines a "member" as "any regularly appointed member of the Police or Fire Departments . . . who become members of the Retirement System" and does not state that such membership shall cease upon retirement, plaintiff asserts that he has been a "member" of the fire department at all times subsequent to 1951 and that his right to retire for service under section 241 was in no way impaired by the fact that he was retired for disability in 1961. Plaintiff places considerable reliance upon certain decisions which have held that retired policemen, firemen or army officers must still be deemed "members" of their respective departments or of the military service within the meaning of statutes or ordinances increasing their pension rights or death benefits. Plaintiff also contends that since the Oakland Police and Fire Retirement Board has in actual practice retired for service policemen and firemen who attained age 55 while on leave of absence without pay or while in active service following a temporary period of retirement for a nonservice-connected disability, the board's decision to deny plaintiff's application to retire for service was clearly arbitrary and based upon no valid ground of distinction.

Although plaintiff has cited a number of cases in support of his claim that he remained a member of the fire department after he was retired for disability, none of these cases dealt with the question of whether an employee who had already retired under one provision of a statute or ordinance and who had never returned to active service might "re-retire" under another provision of the statute or ordinance when he attained a certain age. Typical of the authorities relied upon are *United States* v. *Tyler* (1881) 105 U.S. 244 [26 L.Ed. 985]; *Kavanagh* v. *Board of Police Pension Fund Comrs.* (1901) 134 Cal. 50 [66 P. 36]; *Aitken* v. *Roche* (1920) 48 Cal.App.

753 [192 P. 464]; and *Begley* v. *City of Berkeley* (1958) 156 Cal.App.2d 626 [320 P.2d 228].

The holdings of the *Tyler, Kavanagh* and *Aitken* cases were most recently reaffirmed in *Begley* v. *City of Berkeley, supra,* wherein the court concluded that a fireman who had been retired for disability under a state pension law was still a "member" of the fire department within the meaning of a city ordinance granting pension rights to " 'any member of the Fire Department' " who had served 30 years in the aggregate. The court's conclusion that years spent in disability retirement could be counted toward the 30 years required under the ordinance was based upon the fact that Begley could have been summoned at any time for examination as to his fitness for duty, was required to report quarterly and could have been assigned to duty without pay in cases of great public emergency.

Plaintiff asserts that the term "member," as used in section 241 of the Oakland City Charter, must be interpreted in the same manner as in the cases he cites. He further asserts that he must be deemed to have remained a member of the fire department while retired for disability, because section 243, subdivision (c), authorized his return to active service in the event his disability ceased and section 246 provided that his retirement allowance should become payable to his family rather than to himself if he disobeyed certain rules and regulations, was convicted of a felony or became dissipated or a drunkard.

Plaintiff's position can only be supported by assuming that the term "member," as used in section 241, should be construed in the same manner as in the cases upon which he relies. However, our study of article XXVI of the Oakland City Charter leads unerringly to the conclusion that a fireman or policeman who has been retired for a nonservice-connected disability and never restored to active service cannot be deemed a "member" of the police or fire department, as such term is used in section 241.

Article XXVI demonstrates that the various provisions therein contained were intended to create three separate and distinct methods of retirement which are governed by entirely different rules of eligibility and which are therefore mutually exclusive of one another.

The first of the three methods, retirement for service, is covered in section 241 and is available only to a policeman or fireman who has completed 25 years of service or who has

completed 20 years of service and attained age 55. Plaintiff admittedly did not meet these requirements on the date he was retired for disability, since he had completed 20 but not 25 years of service and was only 52 years of age.

The second method of retirement, for a service-connected disability, is governed by subdivision (a) of section 243, which provides that a policeman or fireman who incurs such a disability shall receive the retirement allowance authorized by section 241 if he meets the requirements of that section. In the event he does not, he shall receive an initial retirement allowance equal to 75 percent of his salary until the date upon which he "would have qualified for service retirement had [he] rendered service without interruption. . . ." From that date on, he receives the retirement allowance provided for in section 241. Plaintiff clearly did not meet the requirements of subdivision (a) of section 243, since his disability was not service-connected.

The third method of retirement is governed by subdivision (b) of section 243, which provides that a policeman or fireman who is disabled from nonservice-connected causes shall receive the retirement allowance authorized by section 241 if he has completed 10 years of service and attained age 55. If he does not meet these requirements, as plaintiff did not, he shall receive a retirement allowance equal to at least one-third of his prior compensation, and cessation of such allowance is authorized only if it is found that he is no longer disabled and may be returned to active service.

A comparison of subdivisions (a) and (b) of section 243 shows that whereas subdivision (a) expressly provides for recalculation of a retirement allowance, under section 241, on the date when the retired employee would have met the requirements of that section had he remained in uninterrupted service, subdivision (b) contains no such provision. We can only attribute the absence of any such provision to a legislative intent not to allow for recalculation of a retirement allowance granted under subdivision (b).

Since a retirement allowance granted under subdivision (b) of section 243 is not subject to recalculation in the manner specified in subdivision (a) and may be terminated, under subdivision (c), only if the retired employee ceased to be disabled, it is obvious that such allowance is granted for life in those cases, such as plaintiff's, where there has been no cessation of disability. Such a conclusion follows from section

240, which provides that a retirement allowance shall continue for life "unless a different term of payment is definitely provided by the context. . . ."

Under such circumstances, to allow plaintiff to "re-retire" for service under section 241 would be to ignore the clear legislative intent not to allow for recalculation of a retirement allowance granted under subdivision (b) of section 243. It would also appear that the granting of such "re-retirement" might well result in giving plaintiff two pensions, since he is still disabled and accordingly entitled to continue receiving a disability retirement allowance for life, unless his disability should cease. Such a possibility was discussed in *Brooks* v. *City of Los Angeles* (1966) 243 Cal.App.2d 436 [52 Cal. Rptr. 392], wherein plaintiffs, who were retired for disability under the Los Angeles City Charter and had not been restored to active service, were held not to be entitled to service pensions rather than disability pensions. The court stated, "sections 182 and 182¼ provide that a disabled member shall be *retired from further service,* and shall thereafter receive a pension, *during his lifetime,* provided that the pension shall cease if the disability ceases and if the member *shall have been restored to active duty.* Section 184 provides: 'That all pensions granted in accordance with the provisions of Sections . . . 182 . . . 182¼ . . . hereof shall remain in full force and effect for the period granted. . . .' If plaintiffs, who already have been retired from further service under sections 182 and 182¼ (on account of disability), and have not been restored to active duty, were now permitted to be retired also under section 181 (for 20 years or more of service), it would appear that they would be entitled to continue receiving their present disability pensions. It is not reasonable to conclude that sections 181, 182 and 182¼ were intended to create such a result." (P. 441.)

In the light of the foregoing, it is apparent that plaintiff, having been retired for a nonservice-connected disability, and having never been restored to active service, cannot be deemed a "member" of the fire department entitled to retire for service under section 241. Although plaintiff contends that such a holding is in conflict with the past practice of the Oakland Police and Fire Retirement Board, we find no substance in the argument. Although the trial court did find that the board had retired for service policemen or firemen who were on leave of absence without pay or who had been returned to active service after a temporary period of retirement for

nonservice-connected disability, the board's action in these cases obviously did not result in any authorized recalculation of a retirement allowance granted under subdivision (b) of section 243 or in the granting of two pensions to the same individual.[2]

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1967.

---

[2]It is irrelevant for the purposes of this opinion whether or not the parties agree that plaintiff Patchin is seeking merely to substitute one type of pension for another, rather than to seek a double pension. In the *Brooks* case, *supra*, the statement of facts set forth therein similarly indicates that the pensioner was seeking to substitute one pension for another and not double coverage.