[Civ. No. 27257. First Dist., Div. Two. Dec. 21, 1970.]

HAROLD LePAGE et al., Plaintiffs and Respondents, v.
CITY OF OAKLAND et al., Defendants and Appellants.

## COUNSEL

Edward A. Goggin, City Attorney, and George M. Cahalan, Assistant City Attorney, for Defendants and Appellants.

Davis, Cowell & Bowe and Philip Paul Bowe for Plaintiffs and Respondents.

## OPINION

**TAYLOR, J.**—This is an appeal by the City of Oakland, its police and fire retirement board, city manager and city auditor (hereafter collectively City) from a judgment granting declaratory relief and a peremptory writ of mandate to respondents, compelling the City to count all time spent in work-incurred disability retirement status as a credit towards years of service retirement time. The City contends that: 1) the complaint did not present a justiciable controversy; 2) the question presented is moot because of respondent LePage's current disability retirement; and 3) the trial court erred in construing the City charter.

The facts as found by the trial court are as follows: Respondent LePage was born on May 5, 1918. He was employed by the City of Oakland as a policeman on December 10, 1946, and continued on active duty as an Oakland policeman until October 1, 1953, at which time he was retired for a service-connected disability pursuant to section 243(a) of the City charter. His disability ceased and he was returned to active duty as an Oakland policeman on January 1, 1958. He would be eligible for a *years of service* retirement under section 241(a) of the Oakland City Charter

on approximately January 5, 1972, if the time he spent in service-incurred disability retirement status is counted toward years of service retirement time; if not, he would not be eligible for a *years of service* retirement until his 55th birthday, May 5, 1973. The City has refused to count the time he so spent.

Respondent Miller is chairman of the Police and Fire Co-Ordinating Council, an unincorporated association that represents, on matters affecting their common interests, a number of other unincorporated associations that include in their membership almost all of the uniformed members of the police and fire departments. All uniformed members of the police and fire departments have a direct financial interest in the question of whether the time spent in work-incurred disability retirement status under section 243(a) should be credited toward "years of service retirement" under section 241(a), but are too numerous to be brought before the court individually.

Preliminarily, we turn to the City's procedural contentions that there was no justiciable controversy and that in any event, the matter was moot as to respondent LePage. The City first contends that the question presented is merely academic or hypothetical as the complaint does not state that either Mr. LePage or any other member of the class has applied or intends to apply for in-service retirement and been refused credit for time spent in work-incurred disability retirement.

Although LePage and other respondents are not yet eligible for service retirement, they are entitled to a declaration of their rights under the charter (*Walker* v. *County of Los Angeles,* 55 Cal.2d 626 [12 Cal. Rptr. 671, 361 P.2d 247]; *Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399 [132 P.2d 804]; *Wilson* v. *L. A. County Civ. Serv. Com.,* 106 Cal.App.2d 572 [235 P.2d 620]). Mandamus is the proper remedy to compel a city council or civil service board to perform its mandatory duties prescribed by the charter (*Leftridge* v. *City of Sacramento,* 59 Cal. App.2d 516 [139 P.2d 112]).

Declaratory relief procedure operates prospectively and not merely for the redress of past wrongs (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717]). Whether declaratory relief should be granted is a matter for the sound discretion of the trial court (*Wilson* v. *L. A. County Civ. Serv. Com., supra,* p. 577). A justiciable controversy must be definite, concrete, touching the legal relations of parties having adverse interests (*Wilson* v. *Transit Authority,* 199 Cal.App.2d 716, 723 [19 Cal.Rptr. 59]).

The instant controversy between respondents and the City meets these requirements. The question presented by respondents' complaint is

whether the charter provisions require the City to credit them for time spent in service incurred retirement disability. The complaint alleged that the City had refused to credit respondent LePage for the time he spent in disability retirement from October 1, 1953, to January 1, 1958.[1] Declaratory relief must be granted when the facts justifying that course are sufficiently alleged (*Walker* v. *County of Los Angeles, supra,* pp. 636-637). The trial court properly concluded that the complaint alleged a justiciable question and did not abuse its discretion (*Jessin* v. *County of Shasta,* 274 Cal.App.2d 737, 744 [79 Cal.Rptr. 359]).

■ The City next contends that the question presented is moot as to Mr. LePage because of his current disability status. This contention is based on the following facts, made a part of the record after this court granted the City's motion to produce additional evidence on appeal.[2] On November 1, 1968, LePage incurred another service-connected disability and after this disability continued for more than one year, was again retired as of December 1, 1969.

The City contends that since LePage was granted a service-connected disability retirement allowance *for his current service-incurred disability,* he is precluded from receiving a *years of service* retirement allowance. The City, without citing authority, also points out that the immediately available, tax-free service-connected disability allowance is preferable to the retirement allowance, making it unlikely that LePage would ever apply for service retirement.

The City's contention assumes that LePage's current disability will continue until he is eligible for in-service retirement. However, his current disability may cease and he may be recalled to active service (City charter, § 243(c)). Accordingly, the question here presented is not moot as to LePage. Even if so, the question remains as to the other respondents, and is of sufficient public interest to require resolution.

■ We turn, therefore, to the merits of the question presented and the pertinent portions of the applicable charter provisions, set forth in the footnote below.[3] The trial court concluded that the City's refusal to count

---

[1]At the time the complaint was filed (February 1969), LePage was on active duty.

[2]The motion to admit a certified copy of the retirement board's Resolution No. 3318, pertaining to LePage's current disability retirement status, was granted pursuant to Code of Civil Procedure section 956a and rules 23(b) and 41 of the California Rules of Court.

[3]Section 240: " 'Compensation' as distinguished from benefits under the Labor Code of the State of California, shall mean the monthly remuneration payable in cash, by the City, without deduction, for time during which the individual receiving such remuneration is a member of the Police or Fire Department, but excluding

and credit time spent in work-incurred disability retirement status under section 243(a) towards years of service retirement under section 241(a) was improper under sections 242 and 243(a). The City's main contention is that "compensation," as used in section 242, means only amounts paid without deduction and, therefore, is limited to salary; as no salary is paid to a member in work-incurred disability retired status, the time so spent cannot be counted and credited towards service retirement.

remuneration paid for overtime and for special details or assignments as provided in Sections 91 and 97 of the Charter."

Section 241(a): "RETIREMENT FOR SERVICE

"Any member of the Police or Fire Department who completes at least 25 years of service in the aggregate, regardless of age, or at least 20 years of service in the aggregate and attains the age of 55 years, said service to be computed under Section 242, may retire for service at his option."

Section 242: "TIME AND SERVICE TO BE INCLUDED

"The following time and service shall be included in the computation of the service to be credited to a member for the purpose of qualification for retirement and death benefits and for calculation of retirement benefits:

"(1) Time during and for which said member received compensation as a member of the Police or Fire Department prior or subsequent to the effective date of this Article, including all such time said member was unable to perform his duties by reason of injury or sickness from any cause."

Section 243: "DISABILITY RETIREMENT

"(a) Any member of the Police or Fire Department who becomes incapacitated for the performance of duty by reason of any injury received in, or illness caused by or arising out of the performance of duty and which disability continues without interruption for one (1) year, may be retired, and, if not qualified for service retirement shall receive a retirement allowance equal to seventy-five (75%) per cent of the compensation attached to the average rank held by such member during the one (1) year immediately preceding such retirement. Such retirement allowance shall be paid until the date upon which said member would have qualified for service retirement had such member rendered service without interruption, and on and after said date said retirement allowance shall be equal to the retirement allowance said member would have received if retired for service on said date based on the compensation attached to the average rank held during the one (1) year next preceding retirement. If at the time of retirement for disability, the member is qualified for retirement for service, said member shall receive a retirement allowance computed under the provisions of Section 241.

"(b) Any member of the Police or Fire Department who becomes incapacitated for the performance of duty for any cause not included in the provisions of the preceding paragraph (a) and who shall have completed at least ten (10) years of service in the aggregate, shall be retired upon a retirement allowance calculated under Section 241, if he has attained the age of fifty-five (55) years, otherwise upon a retirement allowance equal to one and one-half (1½%) per cent of the compensation attached to the average rank held by such member during the three (3) years next preceding such retirement for each year of service, provided that said retirement allowance shall not be less than thirty-three and one-third (33⅓%) per cent of said compensation. . . .

"(c) The Board may at any time order any member who has been retired for disability to be examined by one or more physicians appointed by the Board for that purpose, and if it is found that the disability has ceased, shall order that the retirement allowance shall cease and said member shall be restored to the service in the rank occupied at the time of retirement."

Section 242 (quoted above) provides that time and service to be included is: "Time during and for which said member received *compensation . . .* including all such time said member was unable to perform his duties *by reason of injury or sickness from any cause."* (Italics added.) The above language alone is broad enough to include a work-incurred disability.

The City's argument is based on the definition of "compensation" in section 240 as the *amount received without deduction* and, therefore, not including the work-incurred disability retirement allowance. This allowance is ¾ of his salary (§ 243(a)) and fluctuates as the salary of the rank he holds increases (*Casserly* v. *City of Oakland,* 215 Cal. 600 [12 P.2d 425]). In fact, no deductions out of a member's compensation are permitted when he is on a work-incurred temporary disability (*Hostetter* v. *City of Los Angeles,* 241 Cal.App.2d 397 [50 Cal.Rptr. 526]). Accordingly, the City's interpretation of the term "compensation" to include only salary while on active duty is too narrow. The charter itself provides that its provisions are to be liberally construed (§ 243(g); *Gray* v. *Bolger,* 157 Cal.App.2d 583, 587 [321 P.2d 485]). ■ It is well settled that any ambiguity in pension statutes must be resolved in favor of the applicant to carry out the beneficent purposes of the program (*Wendland* v. *City of Alameda,* 46 Cal.2d 786 [298 P.2d 863]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833]; *McKeag* v. *Board of Pension Commrs.,* 21 Cal.2d 386 [132 P.2d 198]).

■ As to section 243, we recently construed this section of the charter in *Patchin* v. *City of Oakland,* 248 Cal.App.2d 859 [57 Cal.Rptr. 57]. As Patchin never returned to active duty after his retirement for a non-service-connected disability, that case did not reach the question here presented. However, our discussion of the charter provisions is helpful here. After pointing out that the charter created three separate, distinct and mutually exclusive retirement provisions, we said at pages 864 and 865: "The first of the three methods, retirement for service, is covered in section 241 and is available only to a policeman or fireman who has completed 25 years of service or who has completed 20 years of service and attained age 55. . . .

"The second method of retirement, for a service-connected disability, is governed by subdivision (a) of section 243, which provides that a policeman or fireman who incurs such a disability shall receive the retirement allowance authorized by section 241 if he meets the requirements of that section. In the event he does not, he shall receive an initial retirement allowance equal to 75 percent of his salary until the date upon which he 'would have qualified for service retirement had [he] rendered service without interruption. . . .' From that date on, he receives the retirement allowance provided for in section 241. . . .

"The third method of retirement is governed by subdivision (b) of section 243, which provides that a policeman or fireman who is disabled from nonservice-connected causes shall receive the retirement allowance authorized by section 241 if he has completed 10 years of service and attained age 55. If he does not meet these requirements, as plaintiff did not, he shall receive a retirement allowance equal to at least one-third of his prior compensation, and cessation of such allowance is authorized only if it is found that he is no longer disabled and may be returned to active service.

"A comparison of subdivisions (a) and (b) of section 243 shows that whereas subdivision (a) expressly provides for recalculation of a retirement allowance, under section 241, on the date when the retired employee would have met the requirements of that section had he remained in uninterrupted service, subdivision (b) contains no such provision. We can only attribute the absence of any such provision to a legislative intent not to allow for recalculation of a retirement allowance granted under subdivision (b)."

Here, we are dealing with service-connected subdivision (a) retirement. The most reasonable conclusion to be drawn from the recalculation provision of section 243(a) is that time spent in service-connected disability retirement should be counted for in-service retirement, as the employee is treated as continually in the service. We conclude that the trial court properly construed the charter provisions in favor of respondents.

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.