CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES SCOTT et al., | D083412 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CVRI2200766) |
| COUNTY OF RIVERSIDE, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 24, 2025, be modified as follows:

On page 19, at the end of the second full paragraph, the last sentence "We agree" is deleted and the following sentence is inserted in its place:

We agree in part.

On page 20, line 7, the sentence beginning "The County made no effort" is deleted and the following sentence is inserted in its place:

Although in setting the amount of the separate timeshare assessment fee the County could include indirect costs incurred before the fee went into effect, the County made no effort to establish what portions, if any, of these additional costs were attributable to doing separate timeshare assessments.

On page 20, line 9, the sentence beginning "The County cannot rely on" is deleted and the following sentence is inserted in its place:

> Without that required attribution, the County cannot rely on such costs to show its fee-setting methodology produced a fee that "is no more than necessary to cover the reasonable costs of [doing separate timeshare assessments]."

On page 22, line 9, the sentence beginning "Costs include both direct costs" is deleted and the following sentence is inserted in its place:

> Costs include both direct costs (e.g., compensation paid to appraisers) and indirect costs (e.g., compensation paid to support staff, rent, utilities, supplies) to the extent the costs were *both* incurred on or before September 26, 2019, the date ordinance No. 735.3 took effect, *and* incurred in or attributable to doing separate timeshare assessments.

There is no change in the judgment.

The petition for rehearing is denied.

IRION, Acting P. J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF RIVERSIDE,<br><br>    Defendant and Respondent. | D083412<br><br><br>(Super. Ct. No. CVRI2200766) |

APPEAL from a judgment of the Superior Court of Riverside County, Craig G. Riemer, Judge. Reversed and remanded with directions.

Benink & Slavens, Eric J. Benink, Vincent D. Slavens; Kearney Littlefield, Thomas A. Kearney, and Prescott W. Littlefield, for Plaintiffs and Appellants.

Jarvis Fay, Gabriel McWhirter, Tatyana Leskowicz, Chris Wilson; County of Riverside, Office of County Counsel, and Bruce Fordon, Deputy County Counsel, for Defendant and Respondent.


Owners of timeshare estates in a resort sued the County of Riverside (the County) to challenge the legality of the annual fee it charges each owner for a separate assessment of the value of the owner's estate for property tax

purposes. The owners argued the amount of the fee exceeded the reasonable cost of providing the separate assessment and therefore constituted a tax for which voter approval was constitutionally required but had not been obtained. The trial court rejected the owners' argument and entered judgment for the County. We reverse.

I.

BACKGROUND

A. *County's Taxation of Timeshare Interests*

The County levies and collects taxes on nonexempt real property located within the County. (Cal. Const., arts. XIII, § 1, subd. (a), XIII A, § 1, subd. (a)(1); Rev. & Tax. Code, §§ 2151, 2602.) Three County officials cooperate to levy and collect the taxes each year. The assessor, who is part of the County's office of the assessor-county clerk-recorder, determines the value of property for tax purposes. The auditor-controller determines the applicable tax rate, calculates the amount of tax due, and distributes tax revenues. The treasurer-tax collector sends property owners their tax bills, processes payments, and issues refunds.

Among the types of real property the County taxes each year are timeshare estates, which give their owners the right to use accommodations at a property for a period of less than a full year during any given year. (Bus. & Prof. Code, § 11212, subds. (x), (z); Rev. & Tax. Code, § 998; see 9 Witkin, Summary of Cal. Law (11th ed. 2017) Taxation, § 228, pp. 344–345.) A timeshare estate is a separate interest in real property for tax purposes. (Bus. & Prof. Code, § 11213.) Upon written request and provision of specified information to the assessor, each timeshare estate in a timeshare project must be separately assessed and billed. (Rev. & Tax. Code, § 2188.8,

2

subds. (a), (c), (g).)[1] The assessor determines the value of the entire timeshare project and then allocates a portion to each timeshare estate. The County may charge a fee "for the initial and the ongoing costs, not to exceed the actual cost, of the separate assessment and billing, and mailings, with respect to a time-share project." (*Id.*, subd. (g).)

By ordinance No. 735.3, which took effect on September 26, 2019, the County set the separate timeshare assessment fee at $23 (Riverside County Code of Ordinances, § 4.68.120) and began charging that amount in its 2020–2021 fiscal year.[2] The County set the fee amount by starting with the assessor's budget for the 2016–2017 fiscal year ($24,093,533), subtracting grant funds in that year for locating and adding properties to the assessment roll ($2,592,240), dividing the difference ($21,501,293) by the total number of property assessments in that year (919,810), and rounding the quotient ($23.38) down to $23. The assessor chose this method premised on "the determination that when timeshare estates opt to be treated as separately taxed parcels, each estate is asking to be treated like every other assessed

---

[1] According to Charlee Dick, a fiscal manager in the County assessor's office, 26 projects receive separate timeshare assessments, "although several projects are associated with each other in some capacity, resulting in 15 independent groups." At his deposition, Dick testified there were "about 17" timeshare projects the County assessor was charged with valuing. For fiscal years 2019–2020, 2020–2021, and 2021–2022, the County performed 102,257, 98,977, and 93,306 separate timeshare assessments, respectively. The total number of assessments in those fiscal years was 970,660, 972,884, and 972,331, respectively.

[2] The County's auditor-controller charged a $2.70 annual fee and the treasurer-tax collector charged a $6.58 annual fee for costs incurred for separate timeshare assessments. (Riverside County Code of Ordinances, §§ 4.40.010, 4.68.050.) Those fees were challenged in the trial court but are not challenged on appeal.

3

property in Riverside County and should be held responsible for an equal share of the costs of all assessment-related activities."

B.    *Litigation*

James Scott and Mission Hills Vacation Ownership Association I, a corporation of which Scott is the president (collectively Owners), own timeshare estates at the Westin Mission Hills Resort Villas in Rancho Mirage.  There are six different types of timeshare interests in the resort (annual platinum, gold, and silver; and biannual platinum, gold, and silver) and approximately 12,000 total timeshare interests.  Owners have been assessed and have paid separate timeshare assessment fees to the County since 2018.

After the County rejected their claims for refunds under the Government Claims Act (Gov. Code, § 910 et seq.), Owners in February 2022 filed a verified petition for writ of mandate and complaint for declaratory relief and refund (the petition) against the County.  They alleged the cost of performing a separate assessment for a timeshare estate is less than the amount of the separate timeshare assessment fee the County charges, and therefore the fee is a tax that must be, but has not been, approved by the voters under article XIII C of the California Constitution (Article XIII C).[3] Owners asserted three counts by which they sought:  (1) a writ directing the County to rescind the ordinance setting the separate timeshare assessment fee and to cease imposing the fee until it is reduced to the cost of providing a separate assessment or is approved by the voters; (2) a declaration that the

---

[3]    Owners also claimed the County abused its discretion under Revenue and Taxation Code section 2188.8, subdivision (g) by using an unsound methodology that resulted in a fee in excess of the actual cost of doing a separate timeshare assessment.  They have abandoned the statutory violation claim on appeal.

4

fee is a tax that has not been approved by the voters and that the methodology the County used to set the fee is unsound and does not reflect the actual cost of providing a separate assessment; and (3) a refund of the fees they paid the County.

The County filed an answer to the petition. It admitted Owners' allegation the separate timeshare assessment fee had not been approved by the voters, but denied the allegation the fee exceeded the costs of providing a separate assessment. As an "affirmative defense," the County alleged the separate timeshare assessment fee was not a "tax" because the amount charged " 'is no more than necessary to cover the reasonable costs of the government activity' " and " 'the manner in which those costs are allocated to a payor bear[s] a reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity[.]' " (Quoting Art. XIII C, § 1, foll. subd. (e)(7).) The County prayed for a judgment that Owners take nothing by their petition.

The parties stipulated that the trial court would adjudicate Owners' three counts at the same hearing based on declarations, exhibits, deposition testimony, and requests for judicial notice. They agreed to work cooperatively on issues related to the calculation of the refund Owners would be owed should the court rule in their favor, and, if they could not resolve the refund calculation issues informally, to have a second hearing at which the court would resolve them. They also stipulated to discovery and briefing schedules. The court entered the stipulations as orders.

In their opening brief, Owners argued the methodology the assessor used to determine the amount of the separate timeshare assessment fee was "unreasonable and arbitrary" and resulted in "an illegal tax" for three reasons. First, they claimed the assessor erroneously assumed valuing a

5

separate timeshare interest required the same amount of time and resources as required for any other property valuation.  Second, Owners contended the assessor erred by using the entire annual budget for the 2016–2017 fiscal year (less grant funds for locating and adding properties to the assessment roll) to calculate the separate timeshare assessment fee, because the entire budget was not used only for assessments; of the 124 employees who worked on property assessments, only four worked on separate timeshare assessments; and those four employees spent only 30 percent of their time doing so.[4]  Third, Owners asserted the assessor erroneously failed to deduct from the annual budget approximately $12.2 million in revenues it had received for property tax administration under Revenue and Taxation Code sections 75.60 and 95.3.[5]  In support of their opening brief, Owners submitted documents produced by the County in discovery and excerpts of deposition testimony of Charlee Dick (a fiscal manager in the assessor's

---

[4]    Based on data provided by the County for fiscal years 2017–2018 and 2018–2019, Owners calculated the separate timeshare assessment fee as $1.34 by multiplying the total salary and benefits attributable to the four employees who worked on such assessments ($453,636) by 30 percent and then dividing the product ($136,090.80) by the number of assessments (101,906).

[5]    A county may keep up to five percent of taxes collected in supplemental assessments to cover costs incurred when a change of ownership or completion of new construction requires the assessor to reappraise the property and prepare a supplemental assessment.  (Rev. & Tax. Code, §§ 75.10, 75.11, 75.60, subd. (a).)  The County reported that amount as $2.6 million.  A county may also retain as a charge for its services a proportionate share of property tax administrative costs attributable to each non-school entity entitled to a share of property tax revenues.  (*Id.*, § 95.3, subds. (a), (b).)  The County reported that amount as $9,629,066.

office) and two other persons designated as most qualified to testify on certain topics.

In its opposition brief, the County argued the separate timeshare assessment fee was not a tax subject to voter approval. The County contended the fee was imposed for a benefit or service provided to timeshare estate owners that was not provided to owners of other types of property subject to tax assessment, and the amount of the fee did not exceed the reasonable costs of providing a separate assessment. The County conceded its methodology for setting the fee amount was "imprecise" but claimed it yielded "a reasonable estimate of the [a]ssessor's aggregate costs of separately assessing timeshare estates." In establishing the formula to calculate the separate timeshare assessment fee, the County justified its decision not to deduct from its annual budget the revenues it received under Revenue and Taxation Code sections 75.60 and 95.3 on the grounds it was not constitutionally required to use the revenues to "subsidize" the fee and the revenues are for tasks directly related to all assessments. The County claimed its methodology substantially underestimated the cost of a separate timeshare assessment because the formula excluded annual costs of approximately $180,000 for assessment appeals and approximately $6.5 million to $7.5 million associated with the computer system it uses to levy and collect property taxes. The County argued that although the relatively small amount of employee time spent on timeshare assessments "suggest[ed] that valuing timeshare estates is a more efficient process than valuing other properties," costs other than employee time—such as those for maintaining the property ownership database, answering taxpayer inquiries, processing assessment appeals, support staff, and general overhead—must also be considered in calculating the cost of a separate timeshare assessment.

7

With its opposition brief, the County submitted, among other documents, a declaration from Dick, who described the work of the assessor's office, its methodology for calculating the separate timeshare assessment fee, and its revenues and expenses. Dick stated the County tracks expenses for its computer system in an accounting fund called "CREST,"[6] and those expenses were not included in the budget figure used to set the separate timeshare assessment fee. In the declaration, Dick listed the CREST-related non-capitalized operational expenses and depreciation expenses for fiscal years 2019–2020, 2020–2021, and 2021–2022.

Owners filed a reply brief in which they repeated and expanded upon their criticisms of the assessor's fee-setting methodology. They also argued the County could not rely on the CREST-related expenses to justify the amount of the fee, because those expenses were incurred after the County had set the fee, Owners had no opportunity to obtain discovery on or to challenge use of those expenses, and Dick was not competent to testify about them. Owners objected to the statements in Dick's declaration about CREST-related depreciation on multiple grounds.

The County filed a response to Owners' evidentiary objections that included a supplemental declaration from Dick and a declaration from a deputy auditor-controller.

At a hearing on the Owners' petition, the trial court tentatively ruled the County's separate timeshare assessment fee violated Article XIII C

---

[6]     CREST is an acronym for County of Riverside Enterprise Solutions for Property Taxation. CREST is a "cooperative venture" whose "goal is to capitalize on the latest information technology advancements and designs, and implement a new Integrated Property Tax Management System (IPTMS) to meet the business and operational needs of the Assessor-County Clerk-Recorder, Auditor-Controller, and Treasurer-Tax Collector departments."

because the amount of the fee ($23) exceeded the amount needed to cover the reasonable cost of doing a separate assessment and had not been approved by the voters.  After hearing arguments from counsel, the court ordered supplemental briefing on the scope of the evidence it could consider in deciding whether the fee exceeded the reasonable cost of a separate timeshare assessment.  Owners argued the trial court could consider only data the County had relied on in setting the fee, and there was no need to reopen the case to allow presentation of additional evidence.  The County argued the court could consider all evidence relevant to determining the reasonableness of the fee, including CREST-related expenses and the assessor's revenue and expense data for the 2019–2020, 2020–2021, and 2021–2022 fiscal years.  After receipt of the supplemental briefs, the trial court took the matter under submission.

About three months later, the trial court issued a tentative decision that stated it would become final if no party timely requested a statement of decision.  The court sustained Owners' evidentiary objections to Dick's declaration and refused to consider his supplemental declaration because it was untimely and unauthorized.  The court ruled that in setting the amount of the separate timeshare assessment fee, the County did not have to deduct from the assessor's annual budget the revenues received under Revenue and Taxation Code sections 75.60 and 95.3, because those revenues "are extracted, not from the taxpayer, but rather from the governmental entity on whose behalf the taxes are assessed and collected by the County."  Despite sustaining Owner's objections to Dick's declaration and refusing to consider his supplemental declaration, the trial court ruled it could consider CREST-related expenses in deciding whether the separate timeshare assessment fee exceeded the reasonable cost of a separate assessment, even though the

9

County had not included those expenses when it set the fee. The court concluded that when the CREST-related expenses were considered, the separate timeshare assessment fee did not exceed the costs of a separate assessment and did not violate Article XIII C. After no party requested a statement of decision within the time to do so, the court entered a judgment that Owners take nothing from the County by their petition.

## II.

## DISCUSSION

### A. *Parties' Contentions*

Owners contend the County did not meet its burden to prove the $23 it charges annually for a separate timeshare assessment is not a tax within the meaning of Article XIII C. They complain that in approving the County's fee-setting methodology, the trial court erroneously ruled: (1) the County did not have to reduce its costs by revenues it received under Revenue and Taxation Code sections 75.60 and 95.3 before averaging those costs over all assessed properties to set the amount of the fee; and (2) the court could consider CREST-related expenses and costs of assessment appeals in deciding whether the separate timeshare assessment fee exceeded the reasonable and necessary cost of an assessment. Owners ask us to reverse the judgment and to remand the matter for further proceedings.

The County contends it met its burden to prove the separate timeshare assessment fee is not a tax. It defends its fee-setting methodology and argues Article XIII C does not require it to "subsidize" timeshare estate owners by using revenues under Revenue and Taxation Code sections 75.60 and 95.3 to offset the costs of separate timeshare assessments. The County further argues substantial evidence, including evidence of CREST-related costs and assessment appeals costs that were excluded from the calculation of the

10

amount of the separate timeshare assessment fee but that the County says the trial court could consider, supports the court's conclusion the fee is not a tax because it does not exceed the reasonable and necessary cost of a separate assessment. The County asks us to affirm the judgment.

B. *Standard of Review*

The parties disagree on the applicable standard of review. Owners contend we "afford[ ] no deference to the County's determinations as to the constitutionality of its actions," " 'independently review the record,' " and "exercise[ ] independent judgment" to determine whether the County's separate timeshare assessment fee is a tax. The County contends "the proper interpretation of statutory and constitutional provisions" is "subject to *de novo* review on appeal," and the trial court's factual findings are reviewed for substantial evidence. Each side is partially correct.

Whether the County's separate timeshare assessment fee is a tax subject to article XIII C of the California Constitution "is a question of law to be decided by independent review." (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 12 (*Citizens for Fair REU Rates*); accord, *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 267 (*Jacks*); *Boyd v. Central Coast Community Energy* (2023) 96 Cal.App.5th 136, 142 (*Boyd*).) We give no deference to the County's determination on the constitutionality of the challenged fee. (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 798 (*Coziahr*).)

Even when we exercise independent review, however, we presume the appealed judgment is correct and do not reweigh the evidence or decide disputed issues of fact. (*Sutter's Place, Inc. v. City of San Jose* (2024) 104 Cal.App.5th 855, 863; *Boyd, supra*, 96 Cal.App.5th at p. 142.) Although we review challenges to the trial court's factual findings for substantial

11

evidence and defer to its factual determinations when the evidence is in conflict (*Coziahr, supra*, 103 Cal.App.5th at p. 798; *Nunez v. Cycad Management LLC* (2022) 77 Cal.App.5th 276, 283–284), the court did not resolve any conflicts in the evidence on which it based its decision, and Owners do not challenge any factual findings on appeal.  They expressly "accept the accuracy of the figures in the County's budget documents," including "the [a]ssessor's overall budget and the subcategories of costs." Where, as here, the material facts are not disputed, application of the law to the facts is subject to independent review.  (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032; *Crestwood Behavioral Health, Inc. v. Baass* (2023) 91 Cal.App.5th 1, 16; *Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1316.)

C.      *Constitutional Limitations on Fees Charged by Local Governments*

"Beginning in 1978, state voters have imposed various limitations upon the authority of state and local governments to impose taxes and fees." (*Jacks, supra*, 3 Cal.5th at p. 258.)  Article XIII C prescribes some of those limitations.  Section 2 prohibits local governments from imposing a tax unless and until the tax is submitted to the electorate and approved by a majority vote for a general tax or a two-thirds vote for a special tax.[7]  Section 1, subdivision (b) defines " '[l]ocal government' " to include "any county"; and subdivision (e) defines " 'tax' " as "any levy, charge, or exaction of any kind imposed by a local government."  Two of the seven types of charges subdivision (e) excepts from the definition of tax are:  "(1) A charge imposed for a specific benefit conferred or privilege granted directly to the payor that

---

[7]      " 'General tax' means any tax imposed for general governmental purposes."  (Art. XIII C, § 1, subd. (a).)  " 'Special tax' means any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund."  (*Id.*, subd. (d).)

is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege"; and "(2) A charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product." Following the list of exceptions, subdivision (e) states: "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear[s] a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."

"Based on article XIII C's structure, it is apparent that a challenge to an alleged tax involves three questions:  (1) Is the alleged tax a levy, charge, or exaction imposed by a local government?; (2) Does it satisfy an exception to the definition of tax?; and (3) If it does not, was it properly approved by the voters?  If a levy, charge, or exaction is imposed by a local government and does not fit within an exception, it is a tax which must be approved by the voters in order to be valid." (*Citizens for Fair REU Rates, supra*, 6 Cal.5th at p. 12.)  There is no dispute the $23 the County charges a timeshare estate owner annually for a separate property tax assessment is "a levy, charge, or exaction of any kind imposed by a local government."  (Art. XIII C, § 1, subds. (b), (e).)  There is also no dispute the County never submitted the fee to the voters for approval.  (*Id.*, § 2.)  The only dispute is about whether the fee "satisf[ies] an exception to the definition of tax."  (*Citizens for Fair REU Rates,* at p. 12.)

The exceptions the County relies on are those for a charge for a specific benefit conferred on or a specific service provided to only those who are charged. (Art. XIII C, § 1, subd. (e)(1), (2).) To come within those exceptions, the "charge must satisfy *both* the requirement that it be fixed in an amount that is 'no more than necessary to cover the reasonable costs of the governmental activity,' *and* the requirement that 'the manner in which those costs are allocated to a payor bear[s] a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.' " (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1214 (*San Buenaventura*), quoting Art. XIII C, § 1, subd. (e).)[8] As we shall explain, the County's separate timeshare assessment fee does not satisfy those constitutional requirements.

D.    *Flaws in County's Fee-setting Methodology*

The County concedes it does not separately track the amount of employee time and other resources spent on separate timeshare assessments, has no separate budget for those assessments, and the methodology it used to set the fee for those assessments is "somewhat imprecise." "Setting the fee [does] not require mathematical precision." (*Department of Finance v. Commission on State Mandates* (2022) 85 Cal.App.5th 535, 590 (*Department of Finance*).) The County may estimate the reasonable cost of doing all the separate timeshare assessments and allocate to each timeshare estate owner a proportionate share of the aggregate cost. (*California Farm Bureau*

---

[8]    We need not decide whether the County's separate timeshare assessment fee is imposed for a "benefit" conferred on or a "service" provided to a timeshare estate owner. Either way, the fee is subject to the same requirements under Article XIII C, section 1, subdivision (e). (*San Buenaventura, supra*, 3 Cal.5th at p. 1211.) For simplicity, we shall analyze the fee as a charge for a specific service provided by the County.

14

*Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 438 (*Farm Bureau*); *American Coatings Assn., Inc. v. State Air Resources Bd.* (2021) 62 Cal.App.5th 1111, 1128; *Collier v. City & County of San Francisco* (2007) 151 Cal.App.4th 1326, 1349.) As we noted earlier, the County estimated the cost of a separate timeshare assessment by dividing the assessor's total budget for the 2016–2017 fiscal year (less grant funds for locating and adding properties to the assessment roll) by the total number of property tax assessments in that year. We perceive in this methodology three related flaws that make the resultant fee an unconstitutional tax.

First, the County presented no evidence of the additional cost of doing separate timeshare assessments beyond the cost of assessing timeshare projects as a whole. When separate timeshare assessments have been requested, the County may charge timeshare estate owners a fee "for the initial and the ongoing costs, not to exceed the actual cost, *of the separate assessment.*" (Rev. & Tax. Code, § 2188.8, subd. (g), italics added.) No fee may be charged when the assessor prepares a single assessment for an entire timeshare project. (*Id.*, subd. (i).) For the fee to qualify as "[a] charge imposed for a specific government service . . . provided directly to the payor *that is not provided to those not charged*" (Art. XIII C, § 1, subd. (e)(2), italics added), the fee must be limited to the cost of the *extra work* to prepare a separate assessment for each timeshare estate after the project as a whole has been assessed, because only that work qualifies as a service "provided directly and *exclusively to those who pay the charge*" (*Citizens for Fair REU Rates, supra*, 6 Cal.5th at p. 5, italics added). By using the assessor's entire budget for the 2016–2017 fiscal year (less certain grant funds) to calculate the separate timeshare assessment fee, however, the County improperly included as part of the fee the costs of assessing timeshare projects as a whole

15

as well as the costs of assessing all other properties. The County would incur those costs even without a request for separate assessments, and it provides that type of whole-property assessment at no charge for owners of residential, commercial, agricultural, and other types of property. Charging only timeshare estate owners for the cost of a service it provides all property owners takes the fee outside the scope of Article XIII C, section 1, subdivision (e)(2).

Second, the County's methodology erroneously assumes it costs the same amount of money to assess a separate timeshare interest as it costs to assess any other type of property. The County assesses a wide variety of property types for tax purposes and allocates its full-time appraisers among six units: (1) residential; (2) commercial; (3) agricultural; (4) manufactured housing; (5) business property; and (6) total property. The total property unit is responsible for valuing timeshare estates, as well as golf courses, resorts, hotels, hospitals, laboratories, mining rights, local cellular sites, cable TV rights of way, and leaseholds in government lands. For the 2016–2017 fiscal year, only four of the 124 full-time appraisers were assigned to the total property unit, and those four spent only 30 percent of their time on timeshare valuations. Of the 919,810 property valuations performed in that year that the assessor used in calculating the average cost of an assessment, approximately 100,000 were timeshare estates.[9] Based on these figures, full-

---

[9] We did not find in the parties' briefs or in the record the exact number of separate timeshare estates the County assessed in fiscal year 2016–2017. We approximated the number based on figures for the 2018–2019 fiscal year (101,906 separate timeshare assessments and 931,832 total assessments) and figures for the 2019–2020, 2020–2021, and 2021–2022 fiscal years, which we stated in footnote 1, *ante*. The ratio of separate timeshare assessments to total property assessments ranged between 9/100 and 11/100 in fiscal years 2018–2019 through 2021–2022.

time appraisers spent one percent of their time doing 11 percent of their valuations. This disparity reflects an efficiency the parties acknowledge: Similar timeshare estates tend to receive similar valuations, so that once a valuation is done, the County can use that same valuation for many other estates without having to redo all the work needed for the initial valuation of the entire property.[10] Since the amount of time needed to value timeshare estates is comparatively low, the cost of doing so is at the low end of the range of costs of valuing property interests. Charging a timeshare estate owner the average cost based on all property assessments does not "bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Art. XIII C, § 1, foll. subd. (e)(7).)

Third, the County's methodology produces an excessive fee by arbitrarily assigning the owner of every assessed property an equal portion of the assessor's total annual costs for the 2016–2017 fiscal year. Dick stated the County chose the method premised on "the determination that when timeshare estates opt to be treated as separately taxed parcels, each estate is asking to be treated like every other assessed property in Riverside County *and should be held responsible for an equal share of the costs of all assessment-related activities*." (Italics added.) Such costs included not only the salaries and benefits of the employees who actually appraise properties ($13,695,750), but also the salaries and benefits of administrative and support staff ($4,971,823) and general overhead costs such as lease payments, equipment, services, and supplies ($5,425,960). When authorized

---

[10] Dick stated in his declaration that once timeshare estate values are assigned, appraisers can input the values into the computer system and propagate those values from one estate to others with similar characteristics, which "has helped to streamline the process greatly."

to charge a service fee, a county may charge the average cost of providing the service and may include in the fee the reasonably necessary direct and indirect costs. (Gov. Code, § 54985, subd. (a); *County of Orange v. Barrett American, Inc.* (2007) 150 Cal.App.4th 420, 434–437.) In this case, the service for which the County may charge the average cost of providing the service as a fee is doing a "separate assessment" for a timeshare estate owner. (Rev. & Tax. Code, § 2188.8, subd. (g).) The County's fee, however, is not calculated by dividing the total cost of doing all separate timeshare assessments by the total number of such assessments. It is calculated by dividing the total cost of running the assessor's office (less grant funds for locating and adding properties to the assessment roll) by the total number of all property assessments. "An excessive fee that is used to generate general revenue becomes a tax." (*Farm Bureau, supra*, 51 Cal.4th at p. 438.)

E.    *Reduction of Costs by Statutory Revenues*

The parties devote much of their briefing to disputing whether in calculating the separate timeshare assessment fee the County was required to subtract from its total annual costs the annual revenues it received under Revenue and Taxation Code sections 75.60 and 95.3. Owners argue the revenues must be subtracted because the revenues are legally required to be used to cover the County's costs of doing property tax assessments and because the County's fee-setting methodology is based on the costs of doing all property assessments, not just separate timeshare assessments. The County argues it need not offset the costs used to set the separate timeshare assessment fee by the statutory revenues because they are not earmarked for separate timeshare assessments and do not cover all assessment-related costs, they need not be used to subsidize timeshare estate owners, and using them to shift the costs of doing separate assessments from timeshare estate

18

owners to local governments other than the County would violate section 95.3 and constitutional subvention requirements. We need not resolve the parties' dispute on this issue.

In making their opposing arguments about the statutory revenues, the parties erroneously assume the County's methodology can be used to set the separate timeshare assessment fee. The County admits the methodology is "imprecise," but defends it on the ground it treats timeshare estate owners like all other property owners for tax assessment purposes and "produces a reasonable estimate." Owners offer to "live with this imperfect model" if the County "take[s] into account that the starting budget figure in the model is inflated" and reduces it by subtracting the statutory revenues. Even to the extent the parties may be willing to accept the methodology, we cannot. As explained in the immediately preceding section, several flaws in the County's methodology cause it to produce a fee that violates Article XIII C. Those flaws would remain whether or not the revenues the County received under Revenue and Taxation Code sections 75.60 and 95.3 were deducted from the costs it used to set the fee amount.

F.  *Consideration of Costs Not Included in Fee-setting Methodology*

Owners also challenge the County's reliance on costs that were not included in the budget used to set the separate timeshare assessment fee to justify the fee amount. They contend the trial court erroneously considered costs of assessment appeals and CREST-related costs when it determined the County's $23 fee was "significantly less" than the cost of a separate assessment. We agree.

The additional costs the trial court relied on were incurred after the fiscal year on which the County based its fee-setting methodology. The County used the assessor's budget for the 2016–2017 fiscal year to set the

19

amount of the separate timeshare assessment fee.  Dick stated in his declaration that expenses of assessment appeals and CREST-related expenses were accounted for separately and were not included in the budget. The approximately $180,000 per year in assessment appeals costs the County sought to add to the budget was based on costs for fiscal years 2019–2020, 2020–2021, and 2021–2022.  The County did not start using the new computer system that gave rise to the CREST-related costs until 2018.  The County made no effort to establish what portions, if any, of these additional costs were attributable to doing separate timeshare assessments.  The County cannot rely on such costs to show its fee-setting methodology produced a fee that "is no more than necessary to cover the reasonable costs of [doing separate timeshare assessments]."  (Art. XIII C, § 1, foll. subd. (e)(7).)[11]

G.    *Conclusion on Constitutionality of Separate Timeshare Assessment Fee*

In summary, we conclude the County did not sustain its burden to prove the $23 it charges for a separate timeshare assessment is not a tax that requires voter approval.  It introduced no evidence of the "actual cost" of a "separate assessment" (Rev. & Tax. Code, § 2188.8, subd. (g)), i.e., " 'the real expenditures incurred' " in doing the extra work beyond that of valuing a timeshare project as a whole that is needed to apportion the value among all timeshare estates (*Rubio v. Superior Court* (2016) 244 Cal.App.4th 459, 475). The County instead averaged the total cost of running the assessor's office for the 2016–2017 fiscal year (less certain grant funds) over all taxed properties, and arbitrarily assigned that average as the cost of a separate timeshare

---

[11]    Our conclusion makes it unnecessary to decide whether the trial court properly sustained Owners' objections to the statements in Dick's initial declaration about CREST-related depreciation costs or properly excluded his supplemental declaration.

assessment. A fee that is based largely on the costs of services not provided exclusively to the payor (here, running the assessor's office) or that exceeds the reasonable cost of the service that is exclusively provided (here, doing a separate timeshare assessment) is not excepted from the definition of a tax and must be approved by the voters. (Art. XIII C, §§ 1, subd. (e)(2), 2; *Citizens for Fair REU Rates, supra*, 6 Cal.5th at p. 5.) "A levy, charge, or exaction imposed by a local government . . . that does not satisfy an exception and was not properly approved by the voters is an unconstitutional, invalid tax." (*Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.* (2025) 108 Cal.App.5th 485, 504 (*Howard Jarvis Taxpayers Assn.*).) The trial court therefore erred by rejecting Owners' constitutional challenge to the County's separate timeshare assessment fee.

H.    *Proceedings on Remand*

Our conclusion the County's separate timeshare assessment fee violates Article XIII C requires us to reverse the judgment in favor of the County. Based on its contrary conclusion, the trial court entered judgment without reaching the issue of remedies. On remand, it must reach that issue.

In a pretrial stipulation, the parties agreed to try to resolve informally the amount of the refund to be paid to Owners were they to prevail on their challenge to the separate timeshare assessment fee, and to proceed to a second phase of trial if they could not resolve the refund issue informally. On remand, the parties should pursue that course.

If the parties cannot agree on the amount of the refund, the court shall hold a trial on the issue at which the County will bear the burden to prove by a preponderance of the evidence the "reasonable" and "necessary" costs that "bear a fair and reasonable relationship" to the burden on the County of providing a separate assessment to a timeshare estate owner. (Art. XIII C,

21

§ 1, subd. (e)(2) & foll. subd. (e)(7); see *San Buenaventura, supra*, 3 Cal.5th at p. 1214 [remanding for consideration of whether charges bore reasonable relationship to burdens on or benefits of governmental activities]; *Coziahr, supra*, 103 Cal.App.5th at pp. 832–833 [remanding for new trial on refund of charges that exceeded costs when trial court's refund calculations were "unreasonable"].) Those costs include expenses incurred to determine the portion of the assessed value of the timeshare project as a whole that is to be assigned to each timeshare estate, but *not* expenses incurred to value the project as a whole. Costs include both direct costs (e.g., compensation paid to appraisers) and indirect costs (e.g., compensation paid to support staff, rent, utilities, supplies) to the extent the costs were *both* included in the assessor's budget for the 2016–2017 fiscal year *and* incurred in or attributable to doing separate timeshare assessments. (Gov. Code, § 54985, subd. (a); Rev. & Tax. Code, § 2188.8, subd. (g); see *California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 169 [discussing direct and indirect costs].) The separate timeshare assessment fee "may reflect the average cost of providing [the] service." (Gov. Code, § 54985, subd. (a).) Once the trial court determines the maximum permissible amount of the fee, it shall deduct that amount from the $23 fee the County has been charging and award the difference as a refund. (See *Howard Jarvis Taxpayers Assn., supra*, 108 Cal.App.5th at pp. 518–519.) We express no opinion on whether in making that determination, the trial court should use the existing record or should reopen discovery and/or allow the parties to present additional evidence.

On remand, the trial court also shall exercise its discretion in deciding whether and to what extent to award the declaratory, injunctive, and/or writ relief sought by Owners. (*City of San Diego v. State of California* (2008)

22

164 Cal.App.4th 580, 593 [whether to grant writ relief lies in discretion of court]; *California Service Station etc. Assn. v. Union Oil Co.* (1991) 232 Cal.App.3d 44, 57 [same for injunctive relief]; *LePage v. City of Oakland* (1970) 13 Cal.App.3d 689, 692 [same for declaratory relief].)  We express no opinion on how the trial court should exercise its discretion.

## III.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court to conduct further proceedings not inconsistent with this opinion.  Appellants shall recover their costs on appeal.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


KELETY, J.